**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **3:20-CR-108** |
| | | **(JUDGE MANNION)** |
| **TYSHEEN GOTT,** | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Defendant Tysheen Gott was convicted of multiple drug offenses, including drug trafficking conspiracy. Pending before the court are the defendant's objections to the presentence report and the government's Information of Prior Convictions, pursuant to 21 U.S.C. §851(a), alleging that defendant's prior New York state drug conviction subjects him to the imposition of an increased sentence. (Docs. 630, 686, 266). Defendant objects to the presentence report classifying his prior conviction as a "serious drug felony" or "felony drug offense" as defined under 21 U.S.C. §802(57) and 18 U.S.C. §924(e)(2). (Doc. 630). Based upon the Court's review of the record in this case, the defendant's objections will be **GRANTED**.

## I.    BACKGROUND

On May 28, 2020, a Grand Jury sitting in Williamsport, Pennsylvania returned a 12-count Indictment charging defendant Tysheen Gott. On November 12, 2020, a Grand Jury sitting in Williamsport returned a 14-count Superseding Indictment against Gott. The Superseding Indictment included the same charges as the original Indictment except the Superseding Indictment included an Information of Prior Convictions for a previous serious drug felony, submitted by the Government pursuant to 21 U.S.C. §851. (Doc. 266 & Doc. 630 at 4-5).   On May 18, 2021, Gott was charged in a second superseding indictment, (Doc. 392), with one count of conspiracy to distribute controlled substances, i.e., heroin, cocaine, fentanyl, cocaine base ("crack"), and tramadol, Count 1, in violation of 21 U.S.C. §841(a)(1), §841(b)(1)(A) and (B)[1], and eight counts of distribution of controlled substances, i.e., collectively, mixtures and substances containing fentanyl and cocaine base (crack), Counts 2, 3, 4, 5, 6, 7, 8, and 9, in violation of 21 U.S.C. §841(a)(1), §841(b)(1)(C).

---

[1]In Count 1, (Doc. 392 at 2), it was alleged that the amount of controlled substances involved in the drug trafficking conspiracy attributable to Gott, is as follows:

1 kilogram and more of a mixture and substance containing a detectable amount of heroin; and 400 grams and more of a mixture and substance containing a detectable amount of fentanyl.

- 2 -

On August 25, 2021, a jury convicted Gott on all counts of the Second Superseding Indictment. (Doc. 533).

After Gott's conviction, the court directed the Probation Office to prepare a PSR. The PSR was filed on February 23, 2022. (Doc. 630).

The PSR indicated that Gott's previous New York state drug conviction qualifies as a predicate offense for a sentence enhancement under the Guidelines. (Doc. 630). Based on Gott's prior conviction, the PSR calculated Gott's offense level at 43 and a criminal history of IV and finds that his guideline imprisonment range is life. (*Id*. at 18). Specifically, the PSR found that Gott's prior relevant criminal conviction includes the following drug conviction under New York state law:

> 05/08/1998 Date of Arrest; Sold cocaine base (crack) to a confidential informant in Kings County, New York. A violation under N.Y. Penal Law §220.39(1). Judgement for the offense states "Attempted Criminal Sale of a Controlled Substance." (Doc. 630).

Gott, who is represented by counsel, objected to the Government's filing of an Information of Prior Conviction and the PSR classification of his prior conviction as a "serious drug felony" for purposes of enhancing his sentence.

The Government responded to Gott's verbal objections raised on May 13, 2022, the original date scheduled for sentencing, and filed a written

response on June 3, 2022, with attached Exhibits. (Doc. 691). Gott, through his counsel, filed a response in support of his objections to the PSR, supplementing his prior brief, on June 23, 2022. (Doc. 696).

Also, on June 24, 2022, Gott, through his counsel, filed a motion to dismiss the information of prior conviction filed by the government and argues that the government incorrectly contends that his prior State of New York conviction triggers a mandatory minimum 15-year sentence pursuant to 21 U.S.C. §851(b)(1)(A) and §851(a). (Doc. 697). Gott filed his brief in support of his motion to dismiss on June 30, 2022. (Doc. 701).

Despite being represented by counsel, on July 19, 2022, Gott also filed, *pro se*, a request for an evidentiary hearing regarding an alleged causation issue of whether the court, at sentencing, will find that he has caused people to overdose or die, and if so, what evidence supports this conclusion and how this finding will affect his sentencing. (Doc. 708). The court notes that Gott was neither charged with, nor convicted of, Conspiracy to Distribute Controlled Substances Resulting in Death or Distribution of Controlled Substances, Resulting in Death. Thus, Gott will not be sentenced for committing such offenses. As such, Gott's *pro se* request, (Doc. 708), is **DENIED** as **MOOT**. To the extent Gott is also construed as asking for an evidentiary hearing with respect to the evidence which supported his

convictions and the amount of drugs he was found responsible for trafficking, the court notes that these issues were already determined by the jury at Gott's trial and shall not be revisited.

## II.    DISCUSSION

According to the PSR, Gott committed the instant crimes after having a prior conviction under New York state law for a "serious drug felony," as that term is defined in 21 U.S.C. §802(57), and he faces a mandatory minimum term of 15 years' imprisonment on Count 1 of the Second Superseding Indictment. (Doc. 630, PSR ¶89). The PSR also finds that Gott's calculated guideline sentencing range is life imprisonment. (PSR ¶90).

Gott objects to the Presentence Report regarding the Government's §851 notice of his prior conviction, claiming that his state court controlled substance conviction does not constitute a "serious drug felony" as defined in 18 U.S.C. §802(57) and §924(e)(2), and that the §851 enhancement of a mandatory minimum term of 15 years' imprisonment on Count 1 does not apply to him. In particular, Gott contends that his prior New York state drug conviction does not constitute a predicate offense for purposes of a sentence enhancement because the New York state statute definition of cocaine

sweeps more broadly than the federal definition of cocaine in the Controlled Substance Act, ("CSA").

## A. Categorical approach

The court must consider whether Gott's conviction pursuant to N.Y. Penal Law §220.39(1) is categorically a "serious drug felony" as that term is defined in 21 U.S.C. §802(57). When comparing state statutes with federal statutes, there are two approaches to be considered depending on whether the statute is divisible or indivisible. A divisible statute is "a single statute [that] may list elements in the alternative, and thereby define multiple crimes" but a statute that is indivisible is more straightforward ". . . when a statute sets out a single (or "indivisible") set of elements to define a single crime." Mathis v. United States, 579 U.S. 500, 504–05 (2016).

In the Third Circuit, the standard applied is the categorical approach in relation to controlled substance offenses, to determine if the offenses qualify as predicate offenses. United States v. Williams, 898 F.3d 323, 333 (3d Cir. 2018). As the Supreme Court in Mathis explained, to determine whether the conviction qualifies as a predicate offense, district courts should use a categorical approach:

> Our precedents make this a straightforward case. For more than 25 years, we have repeatedly made clear that application of ACCA involves, and involves only, comparing elements. Courts

must ask whether the crime of conviction is the same as, or narrower than, the relevant generic offense. They may not ask whether the defendant's conduct – his particular means of committing the crime – falls within the generic definition. And that rule does not change when a statute happens to list possible alternative means of commission: Whether or not made explicit, they remain what they ever were – just the facts, which ACCA (so we have held, over and over) does not care about.

Mathis, at 2257. In United States v. Steiner, 847 F.3d 103, 118 (3d Cir. 2017), the Third Circuit noted:

Mathis is the latest in the Supreme Court's series of opinions on how prior convictions can be used as predicate "violent felonies" under the Armed Career Criminal Act ("ACCA," 18 U.S.C. §924(e)), precedent that generally applies also to "crimes of violence" enhancements under the Guidelines. Mathis further refined the Court's jurisprudence about when, in applying an elements-based enhancement or analysis, a court may use the "modified categorical approach" — appropriate for statutes that are "divisible," listing elements in the alternative or describing separate crimes, and which is employed to determine what crime a defendant was actually convicted of — instead of the "categorical approach," to which we turn when a statute is not divisible.

(internal citations omitted). Additionally, the court in Williams stated, "[b]ut when prior crimes fall under statutes that are 'divisible'—that is, 'defined with alternative elements' courts apply 'a more record-invasive variant of the categorical approach,' the modified categorical approach." Williams, 898 F.3d at 333.

Here, Gott was previously convicted under the New York Penal statute §220.39(1). Section 220.39 is indivisible. Although the statute contains nine

subsections, the subsections define different *ways* a violation of the single crime listed in the statute can occur. Each subsection is only a variation of how the statute is violated, not a separate, alternative crime. Thus, because of the indivisibility of the prior statute Gott was convicted under, the court applies the categorical approach. See United States v. Boyce, 2022 WL 2159890, *3 (S.D.N.Y. June 15, 2022) ("The categorical approach here requires comparison of the New York state statute[] of which [defendant] was convicted—New York Penal Law 220.39(1) []—with [its] federal analogue[].").

Under the categorical approach, "[i]f a state statute is broader than its federal counterpart—that is, if the state statute criminalizes some conduct that is not criminalized under the analogous federal law—the state conviction cannot be used to enhance the base offense level under the United States Sentencing Guidelines . . . ." Id. Therefore, the categorical approach will be applied to compare New York Penal Law §220.39(1), the New York state statute under which Mr. Gott was convicted, with its federal counterpart.

## B. Time of commission of federal offense

Next, the parties dispute the time at which the court should look to the elements of the federal statute under which Gott was convicted when employing the categorical approach. This is an important issue due to the mutability of federal and state criminal statutes, which means two statutes

- 8 -

can be a categorical match at one point in time but a categorical mismatch at another when legislatures amend one or both of the relevant statutes. The Government contends the court must look to both the New York state and federal statutes in this case as they were at the time Gott was convicted of his state narcotics offense. (Doc. 691). Gott submits that the court should look to the New York state statute at the time of his state conviction, but he urges the court to compare the federal offense as it presently exits, i.e., at the time of federal sentencing.

Both parties are half right. It is true that in determining whether the New York state law is broader than the federal law, the court examines the elements of the state statute as it existed at the time of the prior conviction. *McNeill v. United States*, 563 U.S. 816, 820 (2011); *see also United States v. Brown*, 47 F.4th 147, 154–55 (3d Cir. 2022) ("The *McNeill* Court clarified that to determine whether these prior state offenses were 'serious drug offense[s]' courts must look to the state law as it existed at the time of the state conviction."). However, "[a]s to the federal counterpart, the court looks to the federal law in effect when [Gott] committed the federal offense." *United States v. Baskerville*, No. 1:19-CR-0033, 2022 WL 4536126, at *3 (M.D. Pa. Sept. 28, 2022) (citing *Brown*, 147 F.4th at 150–56).

The Government is not without rationale in advocating for a time-of-state-conviction approach, which, it reasons, would avoid the "radical and absurd result" that, e.g., "a drug kingpin's 2014 New York state conviction for, say, distributing hundreds of kilos of cocaine throughout our communities would not count as a 'prior felony drug offense' and/or a 'controlled substance offense' post 2015 in a federal prosecution since the CSA's definition of cocaine post 2015 (exclusion of 'ioflupane') might not be a categorical match to the New York definition." (See Doc. 691 at 11, 18). On the other hand, Gott is not without prior case law in this district in advocating for a time-of-sentencing approach for analyzing the federal offense. See, e.g., United States v. Miller, 480 F.Supp.3d 614, 622 (M.D. Pa. 2020) ("[Courts look to the federal offense as it presently exists[,]" i.e., at the time of sentencing.). However, the Third Circuit's recent decision in *Brown*, holding that courts must "look to federal law in effect at the time of commission of the federal offense when using the categorical approach to determine if prior offenses are ACCA predicates," controls here.[2] *Brown*, 147

---

[2] In *Brown*, the Third Circuit decided whether Brown's prior state law marijuana conviction constituted a predicate "serious drug offense" under the Armed Career Criminal Act (ACCA). Similarly, here, we decide whether Gott's prior cocaine conviction constitutes a "serious drug felony" as defined in 21 U.S.C. §802(57) which borrows its definition from the ACCA definition of "serious drug offense": "The term 'serious drug felony' means

*(footnote continued on next page)*

F.4th at 155. Accordingly, in using the categorical approach, the court looks to the statute of Gott's prior conviction, N.Y. Penal Law §220.39(1), as that statute existed at the time of Gott's 1998 conviction, and its federal counterpart as that statute existed at the time Gott committed the instant federal offense, which began "in or about 2013," (see Doc. 392, Second Superseding Indictment).[3]

### C.    Categorical comparison of elements

Applying the categorical approach as the court is required under binding precedent reveals Gott's prior New York state statute of conviction and its federal counterpart are a categorical mismatch. As explained above, to be a "categorical match," Gott's prior New York state offense must be parallel to or narrower than the federal analog.

The PSR states that Gott was previously convicted under N.Y. Penal Law §220.39(1) for the attempted criminal sale of cocaine base (crack) in the

---

an offense described in section 924(e)(2) of Title 18 [the ACCA]." 21 U.S.C. §802(57).

[3] The result in this case is the same regardless of when the court looks at the federal statute when employing the categorical approach, since N.Y. Penal Law §220.39(1) has been a categorical mismatch with "controlled substance" under the CSA due to the scope of isomers of cocaine included therein since at least 1992. See, e.g., United States v. Holmes, No. 21-CR-147 (NGG), 2022 WL 1036631, at *7 (E.D.N.Y. Apr. 6, 2022) (comparing New York state and federal narcotics statutes as of 1992 and 1999).

third degree. (Doc. 630 at 13). Specifically, Gott was sentenced to 1-3 years' imprisonment on November 20, 1998, in Kings County Supreme Court, for Attempted Criminal Sale of Cocaine Base (Crack) in the Third Degree, in violation of New York Penal Law §220.39(1), committed on or about May 8, 1998. Gott served about one year and five months in prison. Based on Gott's prior conviction for violating New York Penal Law §220.39(1), the PSR finds that for Gott's instant conviction on Count 1 his minimum term of imprisonment is 15 years, and the maximum term is life. (Doc. 630 at 18, ¶89).

The relevant part of §220.39(1) under which Gott was convicted provides: "A person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells . . . a narcotic drug." N.Y. Penal Law §220.39(1). In turn, "narcotic drug" is defined as "any controlled substance listed in schedule I(b), I(c), II(b) or II(c)" of New York Public Health Law §3306 "other than methadone." N.Y. Penal Law §220.00(7). Schedule II(b)(4) lists as a narcotic drug "[c]oca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances including cocaine and egconine,

their salts, isomers, and salts of isomers." N.Y. Pub. Health L. §3306, Sched.

II(b)(4). As the Southern District of New York in <u>Boyce</u> explained:

> Isomers are chemical compounds "that have the same composition but differ in the chemical arrangement of their constituents." <u>Merck Eprova AG v. Gnosis S.p.A.</u>, 760 F.3d 247, 252 (2d Cir. 2014); <u>see also United States v. Phifer</u>, 909 F.3d 372, 376 (11th Cir. 2018) (defining isomers as "molecules that share the same chemical formula but have their atoms connected differently, or arranged differently in space"); <u>United States v. Hagood</u>, No. 20-cr-656 (PAE) (S.D.N.Y. Mar. 9, 2022), ECF No. 87; Merriam-Webster, accessible at https://www.merriam-webster.com/dictionary/isomer (accessed June 15, 2022) (defining isomer as "one of two or more compounds, radicals, or ions that contain the same number of atoms of the same elements but differ in structural arrangement and properties"); Random House Dictionary of the English Language (defining isomerism as "the relation of two or more compounds, radicals, or ions that are composed of the same kinds and numbers of atoms but differ from each other in structural arrangement").

<u>Boyce</u>, 2022 WL 2159890, at *3. Close analysis of this statute reveals that the definition of cocaine includes any type of isomer of the substance. Indeed, "[b]y its plain language, the New York statute does not limit the isomers of cocaine considered to be narcotic drugs and instead reaches all isomers of cocaine, including positional isomers and other isomers." <u>Id.</u>

Conversely, the analogous federal term under 21 U.S.C. §802, "controlled substance," is drawn more narrowly. Specifically, the Controlled Substance Act includes as a "controlled substance": "cocaine, its salts, optical and geometric isomers, and salts of isomers." 21 U.S.C. §812(a)(4)

(Schedule II). The definition in the Code of Federal Regulations provides further:

> Coca leaves (9040) and any salt, compound, derivative or preparation of coca leaves (including cocaine (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include:
>
> > (i) Decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine; or
> >
> > (ii) [<123>I] ioflupane.

21 C.F.R. 1308.12(b)(4). As used in §1308.12(b)(4), the term "isomer" is defined as "any optical or geometric isomer." 21 C.F.R. §1300.01(b). As such, the federal definition of an "isomer" includes only optical and geometrical isomers, but not positional or other types of isomers as included in the New York law. The court in Boyce recently decided this issue stating:

> [I]t appears that the New York legislature intended to have its law reach all cocaine isomers. When the New York legislature amended the definition of cocaine under Schedule II in 1978, it was concerned about the increasing number of challenges brought in federal prosecutions over whether certain isomers of cocaine constituted controlled substances so as to support a criminal conviction under the federal statute. Specifically, the New York legislature was concerned with the difficulty in distinguishing between a 'levo isomer,' which 'occurs naturally in coca leaves and can be chemically synthesized so this isomer is clearly within Schedule II(a)(4),' and a 'dextro isomer,' which 'is the mirror image of the levo isomer' but 'is not chemically identical' and thus has created 'debate among chemists as to

whether or not it is a controlled substance.' The legislature worried that, should courts decide that a dextro isomer of cocaine is not a controlled substance, criminal prosecutions could face several obstacles, including requiring expensive laboratory testing to differentiate between different isomers of cocaine and potentially '[e]xposing the public to the risks entailed by a legalized form of cocaine' (*i.e.*, a dextro isomer), which, the sponsors of the legislation noted, 'appears to be contrary to the legislative intent of Section 3306 of the Public Health Law.' To address the 'problems' caused by this 'isomer defense' and to close 'the statutory loophole,' the New York legislature amended the definition of cocaine to 'include *all isomers* of cocaine and ecgonine in the schedule of controlled substances.' Thus, while it may be the case that the legislature was primarily concerned with dextro isomers of cocaine, it nonetheless deliberately chose to address the 'problems' and 'the statutory loophole' by amending New York's definition to reach all isomers of cocaine.

Boyce, 2022 WL 2159890, at *5 (quoting United States v. Gutierrez-Campos, 2022 WL 281582, at *15 (S.D. N.Y. Jan. 31, 2022)); see also Holmes, 2022 WL 1036631, at *10 (holding that there is a categorical mismatch between the definition of narcotic drug used in NYPL §220.39(1) and the definition of a controlled substance in the CSA, and that "the text, purpose, and legislative history of the New York statute all point in one direction: 'isomers' of cocaine means all isomers."); see generally United States v. Fernandez-Taveras, 511 F.Supp.3d. 367, 373 (E.D. N.Y. 2021) (holding that the legislative intent and purpose of the New York amendment was to cover "isomers" and that the New York Legislature enacted an amendment which included "*all*

*isomers of cocaine* and ecgonine in the schedule of controlled substances.").[4]

In <u>Holmes</u>, the defendant was convicted in 1992 of attempted criminal sale of a controlled substance, namely, "crack/cocaine," in the third degree under New York Penal Law ("N.Y.P.L.") §§110.00/220.39(1), and he received a sentence of one day in jail and five years of probation. The court in <u>Holmes</u>, 2022 WL 1036631 at *6-7, found that N.Y.P.L. §220.39 was indivisible, citing Austin, 700 F.App'x at 36 (United States v. Swinton, 495 F. Supp. 3d 197, 204-05 (W.D. N.Y. 2020) (finding N.Y.P.L. §220.39(1) indivisible), and that the court must apply the "categorical approach." In <u>Holmes</u>, *id.* at *8-9, the court found that there was a categorical mismatch

_____

[4]The court in <u>Holmes</u>, 2022 WL 1036631, at *9, n.6, noted that "[f]ollowing <u>Fernandez-Taverez</u> [511 F.Supp.3d at 373-74] at least six other district courts in th[e] [second] circuit have reached the same conclusion:

"Isomers" of cocaine under New York law is broader than "isomers" of cocaine under the federal law. *See Gutierrez-Campos*, 2022 WL 281582, at *12-14; Order Setting Forth Statement of Reasons for Sentence, *United States v. Louissaint*, No. 20-CR-685 (S.D. N.Y. Nov. 17, 2021) (Ex. 2 to Def.'s Supp. Auth. Letter (Dkt. 23-2).); Tr. at 25-26, *United States v. Minter*, No. 20-CR-389 (S.D. N.Y. Oct. 12, 2021) (Ex. Q to Wheeler Decl. (Dkt. 22-1) at ECF 121-22) ("[W]hy is it so absurd to think that the New York State Legislature, as a matter of convenience or whatever, decided to throw its net widely[?]"); Tr. at 45-46, *United States v. Ferrer*, No. 20-CR-650 (S.D. N.Y. Jul. 21, 2021) (Dkt. 25); Tr. at 6-11, *United States v. Baez-Medina*, No. 20-CR-24 (S.D. N.Y. July 1, 2021) (Dkt. 50).

between "narcotic drug" under N.Y.P.L. §220.39(1) and "controlled substance" under the CSA since the New York statute criminalizes certain "isomers" of cocaine that the CSA does not.

As such, the court in Holmes, *id*. at *11, held that "New York law covers 'isomers' of cocaine", and that "New York law covers non-optical, non-geometric isomers in its definition of isomers of cocaine, whereas the CSA does not." The court in Holmes, *id*., then concluded that "there is a categorical mismatch between "narcotic drug" under N.Y.P.L. §§220.16(1) and 110.00/220.39(1) and 'controlled substance' under the CSA."

Because the New York definition of "isomer" is broader than the federal definition, the statutes are not a categorical match. See Boyce, 2022 WL 2159890, at *6 ("The Court thus joins the growing list of courts in this Circuit that have held that there is no categorical match between a controlled substance under federal law and a narcotic drug under New York Penal law.") (citing United States v. Hagood, No. 20-cr-656 (S.D. N.Y. Mar. 9, 2022); Gutierrez-Campos, 2022 WL 281582, at *14 (collecting cases)).

In short, here, the issue is whether the state statute under which Gott was convicted, N.Y.P.L. §220.39(1), covered federally controlled substances as defined in the CSA Schedules. The court finds that based on the categorical mismatch between "narcotic drug" under N.Y.P.L. §220.39(1)

- 17 -

and "controlled substance" under the CSA, Gott's underlying New York state court conviction cannot qualify as a "serious drug felony" for purposes of a sentence enhancement under §§851/841(b)(1)(A).

While the court recognizes New York District Court case law is not binding on it, these decisions are very persuasive in this case given the fact that Gott was previously convicted under a New York statute and these courts have considered this statute and made in-depth comparisons to the CSA Schedules regarding cocaine. Thus, the decisions of district courts in New York are instructive with respect to the relevant New York statute and the issues in the present case. These recent cases from New York district courts have consistently found that:

> New York does not define "isomer" in its definition of cocaine. *See* N.Y. Pub. Health L. §3306, sch. II (b)(4). In contrast, the CSA limits "isomer," as used in the definition of cocaine, to "any optical or geometric isomer." 21 C.F.R. §1300.01(b). Thus, whereas the CSA covers only optical and geometric cocaine isomers, the New York statute covers non-geometric, non-optical cocaine isomers not controlled by federal law (*e.g.*, constitutional and positional isomers). On its face then, the New York statute is categorically broader than the federal definition. *See Gutierrez-Campos*, 2022 WL 281582, at *12-14 ("[B]y its terms, New York's definition of cocaine covers isomers of cocaine other than optical and geometric, including positional isomers and other isomers.").

Holmes, 2022 WL 1036631, at *8.

### D. Federal Analogue Act

Finally, it is of no moment that the government contends that even if isomers of cocaine are narcotic drugs covered by N.Y. Penal Law §220.39(1), Gott has not established that those substances would not fall within the scope of the federal definition of controlled substance based on the Federal Analogue Act. The government contends that a "non-optical or positional isomer of cocaine would be a controlled substance analogue and thus a controlled substance under federal law."

As the court in United States v. Holmes, 2022 WL 1036631, *8, explained:

> Positional isomers of cocaine are apparently rare in the drug trade, see United States v. Ruth, 966 F.3d 642, 648 (7th Cir. 2020), because they must be synthesized in laboratory, see F. Ivy Carroll et al., Cocaine Receptor: Biochemical Characterization and Structure-Activity Relationships of Cocaine Analogues at the Dopa-mine Transporter, 35 J. of Medicinal Chemistry 969, 969 (1992). But they do chemically exist and were known to exist when the New York Legislature added the term "isomers" to the definition of cocaine in 1978. (See Opp. at 16, 22 (citing Robert L. Clarke & Sol J. Daum, β-Cocaine, 18 J. of Medicinal Chemistry 102, 102-103 (1975)).) That ends the matter, because a plain reading of the New York statute covers "isomers" of cocaine without limitation including non-optical, non-geometric isomers of cocaine not covered in the CSA. See People v. Burnett, 245 A.D.2d 460, 460 (2d Dep't 1997) ("[A] controlled substance under Schedule II of Public Health Law §3306 includes cocaine and all of its isomers." (emphasis added)).

- 19 -

See also Gutierrez-Campos, 2022 WL 281582, at \*14 (holding that the "plain textual reading of the relevant federal regulations compels the conclusion that New York's definition of cocaine, without limitation to particular types of isomers, is categorically broader than the federal definition", and that "the New York statute criminalizes conduct—specifically conduct involving cocaine isomers other than optical or geometric isomers—that the federal statute does not.") (internal citations omitted).

Additionally, as the court in Gutierrez-Campos, 2022 WL 281582, at \*13, explained,

> "[t]here are various types of isomers; the federal definition, however, extends only to "optical or geometric" isomers of cocaine. The New York definition, in contrast, does not limit the type of isomers that fall within its definition of cocaine. Rather, by its terms, New York's definition of cocaine covers isomers of cocaine other than optical and geometric, including positional isomers and other isomers.

In United States v. Ruth, 966 F.3d 642 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1239 (2021), the Seventh Circuit Court of Appeals applied the categorical approach to determine whether an Illinois criminal statute swept more broadly than the federal definition of "felony drug offense," and whether it was a type of prior conviction that supported enhanced penalties under §841(b). As the court in Turner v. United States, 2022 WL 2046151, \*9 (S.D. Ill. June 7, 2022), recently explained:

- 20 -

The Court of Appeals noted that Illinois defines "cocaine" to include "optical, positional, and geometric isomers" of coco leaves, 720 ILCS 570/206(b)(4), whereas the federal definition includes only "optical and geometric isomers," 21 U.S.C. §812 (Schedule II(a)(4)). *Ruth*, 966 F.3d at 647. Consequently, a defendant could be convicted under state law (say, for delivery of positional isomers), but that conviction would not necessarily qualify under federal law as a "felony drug offense" (which does not include crimes involving positional isomers). *See id.* Therefore, [despite the Federal Analogue Act] the Court of Appeals concluded that 720 ILCS 570/401(c)(2) was categorically broader than conduct within the federal definition of "felony drug offense," *id.* at 647-48, and could not trigger an enhanced sentence under §841(b)(1)(C), *id.* at 650.

For the reasons stated above, the court finds that Gott's New York state conviction under N.Y. P.L. Section 220.39(1) for the sale of a "narcotic drug" cannot qualify as a "serious drug felony" for purposes of a sentence enhancement under §§851/841(b)(1)(A). Thus, Gott's prior New York state drug conviction under §220.39(1) is not a prior drug felony that subjects him to enhanced penalties under 21 U.S.C. §841(b)(1)(A), and this conviction cannot be used to impose a 15-year mandatory minimum sentence with respect to Count 1.

III.   **CONCLUSION**

Accordingly, Gott's objections to the PSR are **SUSTAINED**, (Doc. 686), and Gott's motions to dismiss the information of his prior conviction pursuant to 21 U.S.C. §851(a) for sentencing enhancement, (Docs. 694 & 697), are **GRANTED**. The Court finds that Gott's prior 1998 New York State drug conviction is not a "serious drug offense" under the 21 U.S.C. §841, and that a mandatory minimum sentence of 15 years in prison for his conviction on Count 1 does not apply. An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: January 23, 2023**
20-108-09

- 22 -